**Robert L. PITTMAN, Carl W. Pittman, et al., Appellants (Defendants Below),**

v.

**MAX H. SMITH FARMS, INC. and Max H. Smith, Appellees (Plaintiffs Below).**

No. 54A04–8608–CV–247.

Court of Appeals of Indiana, Fourth District.

April 30, 1987.

Rehearing Denied June 8, 1987.

James S. Kowalik, Hopper & Opperman, Indianapolis, J. David McClure, Giddings Whitsitt Baker & McClure, Lebanon, Donald D. Levenhagen, Hill Fulwider McDowell Funk & Matthews, Indianapolis, for appellants.

Thomas J. Hilligoss, Lacey, O'Mahoney, Mahoney, Angel, Jessup & Hilligoss, Kokomo, for appellees.

CONOVER, Presiding Judge.

Defendants-Appellants Robert and Carl Pittman (Pittmans) appeal the trial court's foreclosure on 58.18 acres of land disallowing the priority of their lien, in favor of Plaintiff-Appellee Max H. Smith Farms, Inc. and Max Smith (Smith).

We affirm.

## ISSUES

The Pittmans present three issues for our review. We rephrase and restate them as,

1. whether the trial court properly interpreted the agreement;

2. whether the Pittmans have an equitable mortgage on the real estate;

3. whether the Pittmans' vendor's lien is superior to the Smith's mortgage; and

4. whether the Pittmans have a 10 year lease on the property.

## FACTS

On August 1, 1983, Smith agreed to sell farm equipment to John Wilson (Wilson) for $108,900. In order to ease Smith's tax burden, Wilson was to pay for the equipment over a 10 year period. Wilson agreed to provide Smith with a mortgage on land to guarantee payment of the purchase price for the equipment. Wilson approached the Pittmans about allowing him to use certain trust property to secure his debt to Smith. On August 9, 1983, the Pittmans signed an agreement (Wilson/Pittman agreement) with Wilson allowing him to mortgage 58.18 acres of land to Smith in the amount of $100,000 for 10 years. The Pittmans then executed a warranty deed in favor of Wilson. Under the agreement, the Pittmans received monthly payments, retained all possessory rights in the land and were entitled to reconveyance of the property clear of all mortgages at the end of a 10 year period.

The warranty deed from the Pittmans in favor of Wilson was recorded August 22, 1983. The agreement was recorded August 24, at 12:01 P.M. At 2:37 P.M. that day, Wilson executed the mortgage on the property in favor of Smith.

In 1985, Wilson was in default on his obligation to Smith and behind in his payments to the Pittmans. On June 3, 1985, Smith began foreclosure proceedings on the property. On June 28, 1985, Wilson filed for bankruptcy under Chapter 11.

The trial court granted Smith foreclosure on the property for the sum of $130,436.23. The court ordered any rights of the Pitt-

mans terminated at the foreclosure sale. The Pittmans appeal.

## DISCUSSION AND DECISION

The Pittmans contend they retained a superior interest to Smith's subsequent mortgage. We disagree.

Both parties agree the warranty deed conveying the property to Wilson and the Wilson/Pittman agreement must be read together.[1] *Merchants National Bank & Trust Co. of Indianapolis v. H.L.C. Enterprises, Inc.* (1982), Ind.App., 441 N.E.2d 509, 510. Each party disagrees as to the meaning of the agreement.

It reads in pertinent part,

AGREEMENT FOR PURCHASE OF RIGHT TO USE FIFTY–EIGHT AND EIGHTEEN HUNDREDTHS (58.18) ACRES OF LAND AS COLLATERAL FOR A $100,000.00 MORTGAGE

PURCHASER: JAMES N. WILSON

SELLER: THE MARY E. PITTMAN REVOCABLE LIVING TRUST

1. Trustees of the Mary E. Pittman Revocable Living Trust shall deed 58.18 acres to James N. Wilson on August 9, 1983 for purposes of obtaining a mortgage from Max H. Smith Farms, Inc. in the amount of $100,000.00. The mortgage shall be for a ten (10) year period and shall be terminated September 15, 1993. The mortgage shall be recorded by September 15, 1983.

2. The property will be reconveyed to the Mary E. Pittman Revocable Living Trust no later than September 15, 1993.

3. The price for the use of collateral shall be $4,200.00 payable September 15, 1983 and $350.00 per month beginning October 15, 1983 and continuing for 119 consecutive months thereafter. As further consideration the Mary E. Pittman Revocable Living Trust retains full farming rights and all income from the prop-

erty including mineral rights for the the (sic) (10) year period.

4. James N. Wilson agrees to have the mortgage removed no later than September 15, 1993.

5. It is understood that the purpose of this agreement is to provide supplementary income to the Trust in order to care for the Grantor.

6. James N. Wilson has agreed to assign an insurance policy to Max H. Smith Farms, Inc. in order to guarantee the full payment of the obligation in the case of the death of James N. Wilson.

DATED this 9th day of August, 1983.

 The construction of a written contract is generally a question of law for the trial court, not a question of fact. *Kleen Leen, Inc. v. Mylcraine* (1977), 174 Ind. App. 579, 369 N.E.2d 638. If the terms of a written contract are ambiguous, it is the responsibility of the trier of fact to ascertain the facts necessary to construe the contract. *R.R. Donnelley & Sons, Co. v. Henry-Williams, Inc.* (1981), Ind.App., 422 N.E.2d 353. A contract is ambiguous when reasonable persons would find its terms subject to more than one interpretation. *Fort Wayne Cablevision v. Indiana & Michigan Electric* (1983), Ind.App., 443 N.E.2d 863.

The clear and unambiguous language of the agreement allows the land to be used as security for a mortgage. This necessarily entails putting the property at risk of foreclosure. Carl Pittman testified he understood mortgaged property could be foreclosed upon in case of default.

 The Pittmans were promised $4,200 plus $350 per month for 120 months to put their property at risk of foreclosure.[2] Under the agreement, as interpreted by the court from the facts and the language of the agreement, they allowed the Smith mortgage to have priority over any lien or right they had in the property.

---

1. The Wilson/Pittman agreement was recorded prior to Smith's mortgage. Smith does not argue he had no notice of the agreement.

2. The Pittmans claim the agreement does not allow the property to be put at risk of foreclosure. This interpretation would render the

agreement meaningless. This court will use common sense justice and the probable intention of the parties to construe a contract. *Rieth-Riley Const. Co., Inc. v. Auto-Owners Mut. Ins. Co.* (1980), Ind.App., 408 N.E.2d 640.

■ An individual may waive the priority of his lien by agreement. *Claypool v. German Fire Ins. Co.* (1904), 32 Ind.App. 540, 70 N.E. 281; *Rose v. Provident Saving & Investment Ass'n* (1901), 28 Ind.App. 25, 62 N.E. 93. The Pittmans exchanged their priority rights in the property for a fee. The Smith mortgage is superior to the Pittman's claim to the property. When Wilson defaulted on the mortgage, the clear and unambiguous language of the agreement allowed Smith to foreclose upon the land as the first lien holder and extinguish any possessory rights the Pittmans had. Any interest the Pittmans had in the property can vest only after the Smith mortgage is satisfied.

The Pittmans contend *Nagel v. Corflor, Inc.* (ND, 1955) 127 F.Supp. 832; is analogous to the facts of this case. We disagree. There, Nagel sought to foreclose a mortgage granted him by Corflor. May Sand & Gravel intervened claiming it had conveyed the property to Corflor subject to certain conditions. The breach of these conditions caused the property to revert back to May Sand & Gravel. The court held Nagel had notice of the conditions and gave the mortgage subject to the fulfillment of those conditions. The court then allowed May Sand & Gravel to gain title to the property free of any liens by Nagel.

Here, Smith like Nagel was given a mortgage on property. Unlike Nagel, Smith was given a priority lien on the property not subject to any conditions. The agreement specifically recognized Smith's mortgage on the property and gave Smith priority rights thereon. The only reasonable reading of the agreement is that the property is to be used to satisfy any deficiency owing to Smith because of Wilson's default in making the necessary payments as he contracted to do.

The Pittmans claim they have a right to reconveyance of the property after 10 years.[3] We disagree.

■ It is apparent the Pittmans seek to invoke the law pertaining to estates on conditions and their divestiture on the happening of certain conditions. Conditions subsequent are conditions operating upon an estate conveyed and render it liable to be defeated for breach of such conditions in which event the estate conveyed reverts to the grantor. *Crawford v. Thompson* (1883), 91 Ind. 266. By the same token this court has stated that just as a grantee takes a deed subject to the conditions in a deed, so too, the grantor must abide by the conditions he places in the deed. *Monawa Tribe No. 352, etc. v. Wiley* (1957), 127 Ind.App. 660, 142 N.E.2d 488, 492.

■ The Smith mortgage is a condition in the deed. Foreclosure upon the Smith's mortgage acted to defeat any reversion in favor of the Pittmans. Nothing else could have defeated the reversion. The satisfaction of Smith's mortgage was the condition to be satisfied prior to reversion as clearly set out in the agreement. Accordingly, the Pittmans' right to reconveyance is extinguished along with any claim to the property.

The Pittmans also contend they acquired an equitable lien in the land. We agree.

■ An equitable lien arises when a debt is part of the purchase price or consideration for an interest in land acquired in a transaction out of which the debt arises and the debt remains unpaid. *Union State Bank v. Williams* (1976), 169 Ind.App. 345, 348 N.E.2d 683. *See also Huffman v. Furman* (1975), 163 Ind.App. 263, 323 N.E.2d 651.

■ It is undisputed Wilson acquired an interest in the land at the same time he incurred a debt to the Pittmans which remains unpaid. The debt consists of monthly payments and the right of the Pittmans to farm the land.

Although the Pittmans have an equitable lien against the property, the lien is inferior

---

3. The Pittmans call this a reversion but confuse the two definitions of the term. The term reversion has two meanings, first, as designating the estate left in the grantor during the continuance of a particular estate and also the residue left in grantor or his heirs after termination of a particular estate. Black's Law Dictionary, 4th Ed., West Publishing Co. (1968). While the Pittmans may have had the first type of reversion, their claim is to the second definition.

to Smith's mortgage lien, however. As stated earlier, the Pittmans contracted away their priority in favor of the Smith mortgage. *See Rose* and *Claypool, supra.*

Finally, the Pittmans contend they have a lease in the property. We disagree.

The terms of the agreement call for the right to farm the land and use its mineral rights as "further consideration" for the use of the property as collateral. This right to use the land is secondary to the Smith mortgage. Accordingly, the Smith mortgage has priority over the Pittmans' right to retain possession of the land.

The Pittmans cite *Harvey v. Million* (1879), 67 Ind. 90 and *Kluse v. Sparks* (1894), 10 Ind.App. 444, 36 N.E. 914, in support of their argument they are entitled to a 10 year lease in the property. These cases are inapposite to the present fact situation. In both *Harvey* and *Cluse* the court ruled emblements were the personal property of the seller. Neither allows a seller a right to future crops. Here, the court allowed the Pittmans to harvest the emblements in accordance with these decisions but said any future interest in the land would be severed at the foreclosure sale. The court's ruling is consonant with the cited cases.

The trial court is affirmed.

YOUNG and HOFFMAN, JJ., concur.