**PPG INDUSTRIES, INC.,
Plaintiff–Appellant,**

v.

**George RUSSELL, Defendant–Appellee.**

No. 88–3132.

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1989.

Decided Oct. 19, 1989.

Charles W. Kenrick, Frederick W. Bode, III, Dickie, McCamey & Chilcote, Pittsburgh, Pa., and Allen F. Wharry, Lebanon, Ind., for PPG Industries, Inc., plaintiff-appellant.

Alan S. Brown and Robert F. Zoccola, Locke, Reynolds, Boyd & Weisell, Indianap-olis, Ind., for George Russell, defendant-appellee.

Before COFFEY, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiff-appellant, PPG Industries, Inc. (PPG), and the defendant-appellee, George Russell, entered into a covenant and agreement not to sue in connection with Mr. Russell's failed attempt to purchase PPG's Plastic Fabricating Division. In this diversity action, PPG alleges that Mr. Russell breached this agreement when he later sued the successful purchaser of the Division in state court and PPG was joined as a third-party defendant. The district court determined that the agreement was unambiguous and granted Mr. Russell's motion for summary judgment. PPG now appeals. We reverse the judgment of the district court and remand for further proceedings.

I.

Background

*A. Facts*

In 1979, PPG decided to sell its Plastic Fabricating Division (the Division). Mr. Russell, then vice-president of PPG and the general manager of the Division, began negotiations with PPG in an effort to purchase the Division. To obtain financing for the acquisition, Mr. Russell also commenced negotiations with Mr. C.W. Jackson. On August 15, 1980, PPG entered into a written agreement with Mr. Russell that stated the terms for his purchase of the Division. The agreement, referred to as the Restated Agreement, provided that the PPG/Russell closing would take place on September 30, 1980. On the morning of the closing, Mr. Russell informed PPG that he did not have the money for the purchase price because he and Mr. Jackson had been unable to agree on financing terms.

Mr. Russell had arranged to sell Ideal Mold—part of the Division—to Decatur Mold, Tool and Engineering, Inc. on the PPG/Russell closing date. Because the

PPG/Russell sale did not close, Mr. Russell had no right to sell Ideal Mold. Therefore, he transferred to PPG the right to sell Ideal Mold to Decatur Mold. PPG closed this sale on October 1, 1980. The district court concluded that, in consideration for the transfer of this right, PPG granted Mr. Russell two additional weeks in which to obtain funds sufficient to cover the purchase price. *See PPG Industries, Inc. v. Russell*, No. IP 85–878–C, mem. entry at 3–4 (S.D.Ind. Oct. 5, 1988); R.33 at 3–4 [hereinafter Mem. op.]. PPG asserts that it allowed Mr. Russell an opportunity to raise the money during the first two weeks in October only "as a courtesy and given his longstanding interest" in the Division. Appellant's Br. at 6–7.

After the collapse of the PPG/Russell closing on September 30, Mr. Jackson approached PPG and expressed an interest in purchasing the Division. Subsequently, during October 1980, PPG negotiated with Mr. Jackson, Mr. Russell, and other pro-spective purchasers. Mr. Russell's efforts to raise the money were unsuccessful. As a result, on or before October 20, 1980, PPG sold the Division to Mr. Jackson. "As part of the sale, PPG warranted and represented to Jackson that it had an unencumbered right to sell the [Division] and that the sale of the [Division] to Jackson did not constitute a breach of any other agreement." Mem. op. at 4.

When Mr. Russell learned that PPG was negotiating a sale of the Division to Mr. Jackson, he notified in writing PPG and Mr. Jackson that he objected to these dealings, and threatened to sue if PPG sold the Division to Mr. Jackson. Consequently, after PPG and Mr. Jackson had signed a sales agreement, PPG and Mr. Russell negotiated and signed a Covenant and Agreement, dated October 28, 1980 (the covenant). This covenant provided for the termination of Mr. Russell's employment and contained certain undertakings not to sue.[1]

---

1. Both parties agree that the relevant provisions of the Covenant and Agreement read as follows:

[In consideration for certain sums discussed elsewhere in the agreement, Russell] hereby covenants and agrees not to make a claim, take action or commence any legal or other proceeding, directly or indirectly (1) against PPG, or its agents, employees, officers or directors, in connection with (a) the Restated Agreement between PPG and Russell dated as of August 15, 1980 (the 'Restated Agreement'), (b) the sale made on October 1, 1980 by PPG to Decatur Mold, Tool and Engineering, Inc. of a part of the assets, properties and business of PPG's Plastic Fabricating Division, and (c) the sale of all or any part of the remaining assets, properties and business of PPG's Plastic Fabricating Division to any third party (including, but not limited to, C.W. Jackson, or his successors, heirs, assignees or nominees) or (2) against PPG, or its agents, employees, officers or directors, or any third party (including, but not limited to, C.W. Jackson, or his successors, heirs, assignees or nominees) to whom all or any part of the remaining assets, properties and business of the Plastic Fabricating Division may be sold by PPG, that would, or seeks to, interfere with the possession, use, ownership or enjoyment of the assets and properties, or the carrying on of the business, of the Plastic Fabricating Division by PPG or any third party; provided, that these covenants and agreements shall not be deemed to restrict, in any way, Russell's right to make a claim or commence any proceeding against any such third party for mon-ey damages. Russell further hereby covenants and agrees not to make a claim, take action or commence any legal or other proceeding, directly or indirectly, against PPG, or its agents, employees, officers or directors, or any third party (including, but not limited to, C.W. Jackson, or his successors, heirs, assignees or nominees) that would, or seeks to, delay, obstruct, prevent, enjoin or otherwise interfere with the sale of all or any part of the remaining assets, properties and business of the Plastic Fabricating Division to any third party (including, but not limited to, C.W. Jackson, or his successors, heirs, assignees or nominees).

\* \* \* \* \* \*

It is hereby agreed by the parties hereto that PPG views the Restated Agreement as having duly terminated on September 30, 1980, and that Russell views the Restated Agreement as not having terminated. Nothing herein shall be construed as an admission by either party hereto of the validity of the view of the other party hereto; provided, however, that *Russell hereby covenants and agrees that he will not assert, in any claim, action or legal or other proceeding against PPG, or its agents, employees, officers or directors, or any third party (including, but not limited to, C.W. Jackson, or his successors, heirs, assignees or nominees) that the Restated Agreement was valid and binding or had any legal or other effect at any time after September 30, 1980 to the extent that such assertion by Russell would impose liability upon PPG under any representations or warranties made by PPG in connection with*

In consideration for this agreement, PPG agreed to pay Mr. Russell up to $120,000 ($25,000 for the termination of his employment and, for the covenant not to sue, a reimbursement up to $95,000 for expenses incurred in the PPG/Russell negotiations).

## B. The Underlying State Court Litigation (The "State Court Litigation")

In December 1981, more than a year after PPG and Mr. Russell had entered into the covenant, Mr. Russell filed a ten-count complaint against Mr. Jackson and C. W. Jackson Co. in the Circuit Court of Marion County, Indiana.[2] Mr. Russell alleged that Mr. Jackson had promised to provide financing for the purchase of the Division. The complaint alleged, *inter alia*, intentional interference with a contractual relationship, breach of contract, breach of joint venture, promissory estoppel, fraudulent misrepresentation, conversion, and a conspiracy between PPG and Mr. Jackson to deprive Mr. Russell of an exclusive contract right to purchase the Division after September 30, 1980. In essence, Mr. Russell claimed that Mr. Jackson breached a financing agreement that was intended to enable Mr. Russell to purchase the Division and further asserted that Mr. Russell had exclusive contract rights to purchase the Division after September 30, 1980.

In response to Mr. Russell's allegations, on May 5, 1982, Mr. Jackson filed a third-party complaint against PPG seeking indemnification for the company's alleged breach of representations and warranties set forth in the contract executed by PPG and Mr. Jackson to effectuate Mr. Jackson's purchase of the Division. Mr. Jackson alleged that, to the extent Mr. Russell had the exclusive right to purchase the Division after September 30, 1980, PPG had misrepresented that it had an unencumbered right to sell the Division.

In January 1983, PPG answered the third-party complaint and, pursuant to Indiana Trial Rule 14(A), filed a claim against Mr. Russell alleging that he had violated provisions of the covenant not to sue. The basis for this allegation was Mr. Russell's promise to refrain from making claims that could cause PPG to be in breach of its warranties in connection with the sale of the Division to Mr. Jackson. PPG alleged that Mr. Russell's initiation of the state court litigation against Mr. Jackson had breached this covenant. In March 1984, Mr. Russell amended counts VI and VIII to allege a separate agreement made with PPG on September 30, 1980. Mr. Jackson then amended his third-party complaint to conform to the new "separate agreement" theory.

In September 1984, PPG elected to withdraw the Rule 14(A) claim without prejudice. The state case still proceeded to trial and resulted in a $2,000,000 verdict in favor of Mr. Russell against Mr. Jackson and a verdict in favor of PPG with respect to Mr. Jackson's third-party complaint. The trial court decision was affirmed by the Indiana court of appeals. *See Jackson v. Russell,* 498 N.E.2d 22 (Ind.Ct.App.1986).

## C. This Litigation

Basing jurisdiction on diversity, PPG's complaint in this action alleged that Mr.

---

the sale or [sic] all or any part of the remaining assets, properties and business of the Plastic Fabricating Division to any third party (including, but not limited to, C.W. Jackson, or his successors, heirs, assignees or nominees).

Except as otherwise provided herein, it is hereby further agreed by the parties hereto, that Russell expressly reserves the right to proceed against and sue any person (including, but not limited to, C. W. Jackson, or his successors, heirs, assignees or nominees) or entity other than PPG or its agents, employees, officers or directors, against whom he may have any claim on account of damages arising out of the sale by PPG of the remaining assets, properties and business of the Plastic Fabricating Division. It is hereby further

agreed by the parties hereto that, in that connection, the covenants and agreements of Russell herein are not to be treated as a release or discharge of PPG.

If Russell violates or defaults upon any of the terms of this Covenant and Agreement, PPG shall be entitled to be indemnified and held harmless by Russell from any damages, losses or liabilities with respect thereto and to recover from Russell all such damages, losses and liabilities including reasonable attorneys' fees and expenses relating thereto.

Plaintiff's Ex. B at 2–4 (emphasis supplied).

**2.** This action was thereafter removed to Indiana's Boone County Circuit Court for all further proceedings.

Russell violated the covenant when he asserted in counts VI and VIII that the Restated Agreement was valid and binding after September 30, 1980. Additionally, PPG claimed that Mr. Russell's allegations of a conspiracy between PPG and Mr. Jackson caused Mr. Jackson to join PPG in the state court litigation. In essence, PPG alleged that Mr. Russell's actions caused it to be entangled in litigation it had sought to avoid by executing the covenant. PPG asserted that the plain language of the covenant required Mr. Russell to reimburse PPG for expenses and reasonable attorney's fees incurred in the state court litigation. Both parties moved for summary judgment: PPG asserted that the plain language required reimbursement, and Mr. Russell alleged that the plain language did not require reimbursement to PPG. On October 5, 1988, PPG's motion for summary judgment was denied and Mr. Russell's cross-motion for summary judgment was granted. PPG now appeals.

## II.

### Discussion

#### A. Governing Principles of Law

In examining the district court's grant of summary judgment, our duty is to review *de novo* the record and the controlling law. " '[W]e must decide whether the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.' " *Dribeck Importers, Inc. v. G. Heileman Brewing Co., Inc.*, 883 F.2d 569, 573 (7th Cir.1989) (quoting *Colan v. Cutler–Hammer, Inc.*, 812 F.2d 357, 360 (7th Cir.) (per curiam), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987)); *see also DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987). As we recently reiterated in *Dribeck Importers*, "[a] genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " *Dribeck Importers, supra*, 883 F.2d at 573 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

Since our jurisdiction is based on diversity of citizenship, *see* 28 U.S.C. § 1332, state substantive law must govern the rights and liabilities of the parties. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties agree that the applicable law is the law of Indiana. Indeed, in the covenant, PPG and Mr. Russell agreed that "it is the intent of the parties ... that [the Agreement] is to be construed under the laws of the State of Indiana." Plaintiff's Ex. B at 5. In applying state law in a diversity action, while mindful of our duty to review determinations of law *de novo, see Cross v. American Country Ins. Co.*, 875 F.2d 625, 628 (7th Cir.1989); *Bandura v. Orkin Exterminating Co., Inc.*, 865 F.2d 816, 819 (7th Cir.1988); *see also Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir.1985), we accord great weight to the determination of the district court sitting in the state whose law is to be applied. *See Palace Entertainment, Inc. v. Bituminous Casualty Corp.*, 793 F.2d 842, 846 (7th Cir.1986); *see also Hager v. National Union Elec. Co.*, 854 F.2d 259, 262 (7th Cir.1988). Here, our colleague in the district court has provided us with an exhaustive treatment of the governing principles. We find ourselves in agreement with respect to the statement of these governing principles. In Indiana, "[t]he construction of a written contract is generally a question of law for the trial court, not a question of fact." *Pittman v. Max H. Smith Farms, Inc.*, 506 N.E.2d 1139, 1141 (Ind.Ct.App.1987). If the terms of a contract are not ambiguous, construction of those terms is a matter of law for the court to determine. *Kleen Leen, Inc. v. Mylcraine*, 174 Ind.App. 579, 369 N.E.2d 638, 640–41 (Ind.Ct.App.1977).

Indiana law also provides firm guidance for determining whether an ambiguity exists. "[A]n ambiguity is not established by the mere fact the parties assert different interpretations of the contract." *Tucker v. Richey*, 448 N.E.2d 1206, 1210 (Ind.Ct.App. 1983), *vacated on other grounds*, 460 N.E.2d 964 (Ind.1984). If, however, "reasonable men would find the contract sus-

ceptible to more than one construction, ambiguity exists." *Adult Group Properties, Ltd. v. Imler,* 505 N.E.2d 459, 466 (Ind.Ct. App.1987). *See also Kordick v. Merchants Nat'l Bank & Trust Co.,* 496 N.E.2d 119, 125 (Ind.Ct.App.1986). Whether the terms of a contract are capable of more than one interpretation is determined in Indiana by application of the following principles:

1) Words used in a contract must be given their common meaning unless, from the entire contract and its subject matter, it is clear that some other meaning was intended, and

2) Words, phrases, sentences and paragraphs of a contract are not to be read alone; the intention of the parties must be gathered from the entire contract.

*Tucker,* 448 N.E.2d at 1210 (quoting *Ethyl Corp. v. Forcum–Lannom Assoc., Inc.,* 433 N.E.2d 1214, 1218 (Ind.Ct.App.1982)).

Sometimes, the ambiguity arises by reason of the language used, and can be resolved by the trial judge. *Tucker,* 448 N.E.2d at 1210. However, if the intent of the parties "is not spelled out, and the evidence is conflicting, the issue as to their intent is a question of fact." *Adult Group Properties,* 505 N.E.2d at 466. When additional facts are necessary in order to determine the intent of the parties, " 'the particular ambiguity should be selected and submitted to the jury under proper instructions.' " *Indiana Broadcasting Corp. v. Star Stations,* 180 Ind.App. 207, 388 N.E.2d 568, 572 (Ind.Ct.App.1979) (quoting *Wilson v. Kauffman,* 156 Ind.App. 307, 296 N.E.2d 432, 437 (Ind.Ct.App.1973)).

*B. Application of the Governing Principles*

1. The Problem Presented

 The difference between the parties centers on the following language from the covenant:

... Russell hereby covenants and agrees that he will not assert, in any claim, action or legal or other proceeding against PPG, or its agents, employees, officers or directors, or any third party (including, but not limited to, C.W. Jack-

son, or his successors, heirs, assignees or nominees) *that the Restated Agreement was valid and binding or had any legal or other effect at any time after September 30, 1980 to the extent that such assertion by Russell would impose liability upon PPG under any representations or warranties made by PPG in* connection with the sale o[f] all or any part of the remaining assets, properties and business of the Plastic Fabricating Division to any third party (including, but not limited to, C.W. Jackson, or his successors, heirs, assignees or nominees).

Plaintiff's Ex. B at 3–4 (emphasis supplied).

In PPG's view, Mr. Russell breached this covenant by including counts VI and VIII in his complaint in the state court litigation. In the original version of the complaint, Mr. Russell alleged that Mr. Jackson had interfered with his exclusive right to purchase the Division because the Restated Agreement remained in effect after September 30, 1980. In the amended complaint, Mr. Russell asserted that, after September 30, 1980, he and PPG had a separate agreement that gave him the right to purchase the Division. Because Mr. Jackson contracted with PPG to purchase the Division free from encumbrances, Mr. Jackson joined PPG as a third-party defendant in the state court litigation in order to have PPG indemnify and hold him harmless. Although it was exonerated from any liability to Mr. Jackson in the state court litigation, PPG continues to seek reimbursement for its expenses in defending these allegations. In its view, the plain language of the agreement permits recovery because Mr. Russell violated the covenant when he asserted claims that "sought to impose liability upon PPG or caused PPG to become embroiled in [Division]-related litigation." Appellant's Br. at 19.

Mr. Russell also asserts that the contract terms are unambiguous and that he is entitled to judgment as a matter of law. Mr. Russell submits that he cannot be found to have breached the covenant not to sue unless his assertion that the Restated Agreement was in effect after September 30,

1980 *actually imposed* liability upon PPG for breach of warranties and representations in its sale of the Division. Mr. Russell asserts that, since PPG was exonerated at trial, and is thus free of any liability, he is not obliged to pay its attorney's fees. Thus, in Mr. Russell's view, he would have breached the covenant only if his allegations in the state court litigation actually resulted in liability upon PPG. Because PPG prevailed against Mr. Jackson's third-party complaint in the state court litigation, Mr. Russell argues that no liability can be imposed.

The district court determined, as Mr. Russell had urged, that the contract was unambiguous and imposed liability on him only in the event that his allegations in the state court litigation resulted in PPG's actual liability for breach of covenant. Furthermore, held the district court, while the original complaint alleged that the Restated Agreement existed beyond September 30, 1980, the amended complaint, alleging a separate agreement, did not. Thus, in the district court's view, any liability imposed on PPG would not have been a result of an assertion that the Restated Agreement remained in force beyond September 30, 1989.

### 2. Our Resolution

The district court's task of construing this covenant was indeed a formidable one. The phraseology is tortuous and the organization not self-evident. Indeed, to a large extent, it is these characteristics of the covenant that lead us to conclude, in respectful disagreement with the district court, that the instrument is ambiguous. In our view, the language can be construed to support the position of either party. It is possible to construe the term "would impose liability" to "mean 'to the extent that such assertion imposes liability upon PPG,' with the auxiliary 'would' inserted because such liability, at the time of drafting the covenant and agreement, was a future or prospective event." Mem. op. at 16. However, PPG's assertion that the clause was meant to permit recovery "from Russell to the extent that Russell's assertions caused PPG to expend funds for legal representation to defend a third-party claim for breach of warranties," Mem. op. at 17, is also a reasonable reading of the text.

In reaching the conclusion that the contract is ambiguous, we necessarily must acknowledge that there is textual support for the view of the district court. For instance, in an earlier part of the covenant, the language states that Mr. Russell "covenants and agrees not to make a claim, take action or commence any legal or other proceeding, directly or indirectly ... that *would, or seeks to*, interfere with the possession, use, ownership, or enjoyment of the assets and properties...." Plaintiff's Ex. B at 2 (emphasis supplied). Additionally, the covenant states that "Russell further ... covenants and agrees not to make any claim ... that *would, or seeks to*, delay, obstruct, prevent, enjoin or otherwise interfere with the sale of all or any part of the remaining assets...." *Id.* at 3 (emphasis supplied). The district court was of the view that the phrase "or seeks to" in conjunction with the word "would" is significant because it reveals an intent to avoid the occurrence of a future event. By contrast, in the clause at issue here, the use of "would" alone seeks to indemnify only if liability is actually imposed. However, in the contexts in which the covenant uses the phrase "would, or seeks to," the object was to ensure that Mr. Russell did not stop or delay the sale. By contrast, in the section at issue, the focus is PPG's reimbursement for costs incurred in connection with any legal action after the sale. The difference in language therefore is not dispositive.

While there is support for the district court's view, PPG's reading of the covenant cannot be characterized as unreasonable. The plain wording of the contract will support the interpretation that PPG contracted for Mr. Russell's forbearance with respect to any claim that would necessarily implicate PPG and expose it to greater liability. Moreover, the covenant's structure and organization, inasmuch as it is ascertainable, lends some support to PPG's view that the parties intended to eliminate completely the possibility that

PPG would incur additional costs from its dealings with Mr. Russell or Mr. Jackson.

Nor do we believe that a grant of summary judgment can be sustained on the ground that Mr. Russell's amended complaint in the state court litigation only alleged that an agreement—not the Restated Agreement—existed after September 30, 1980. On this record, it cannot be established definitively whether the covenant was intended to preclude suits based only on an assertion that the Restated Agreement existed beyond September 30 or whether the covenant was also meant to preclude claims that the substance, if not the form, of the Restated Agreement remained in force beyond that date. It is significant that, at the time the covenant was executed, "Russell view[ed] the Restated Agreement as not having terminated" on September 30, 1980. Plaintiff's Ex. B at 3. Therefore, it is understandable that his obligation not to sue would be expressed in terms of the Restated Agreement. However, it is not at all clear that the parties understood that Mr. Russell could place in jeopardy PPG's warranties to Mr. Jackson by the simple expedient of not mentioning the Restated Agreement but nevertheless claiming it had been extended. In short, it would be reasonable to conclude that, by the language employed, the parties intended to avoid any suit in which Mr. Russell could call into question the right of PPG to sell the Division to Mr. Jackson after September 30, 1980. Under these circumstances, the district court must conduct additional proceedings to ascertain the intent of the parties.

### Conclusion

Because we believe that the covenant is ambiguous, we must conclude that further proceedings in the district court are necessary. Accordingly, the judgment of that court is reversed and the case is remanded for further proceedings. Each party shall bear its own costs of this appeal.

REVERSED AND REMANDED.

* Judgment and opinion vacated.