914 F.2d 107
 17 Fed.R.Serv.3d 1288
 G. Raymond BECKER, John P. Dailey, Gordon E. Burns, Jr., and
Bill A. Lanzotti, d/b/a Continental Development
Company, an Illinois general
partnership, Plaintiffs-Appellants,
v.
TENENBAUM-HILL ASSOCIATES, INCORPORATED, a corporation,
Defendant-Appellee.
 No. 89-1759.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 5, 1990.
Decided Sept. 20, 1990.
 
 John C. Parkhurst, Franklin L. Renner, Littler, Renner, Howard & Schroeder, Peoria, Ill., for plaintiffs-appellants.
 Timothy L. Bertschy, Heyl, Royster, Voelker & Allen, Peoria, Ill., Cathy J. Dean, Kansas City, Mo., for defendant-appellee.
 Before CUMMINGS, POSNER, and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 The plaintiffs-appellants initially filed this suit in state court in Illinois, seeking damages for alleged misrepresentations made by the defendant. The suit was removed to federal court based on diversity of citizenship. The defendant then moved for summary judgment. The district court granted the motion, and the plaintiffs filed a timely notice of appeal. For the following reasons, we affirm the judgment of the district court.
 
 I BACKGROUND
 A. Facts
 
 2
 The appellants are general partners in Continental Development Company, an Illinois general partnership that owns an interest in a Holiday Inn hotel located in Waterloo, Iowa. All of the partners are citizens of Illinois. The appellee, Tenenbaum-Hill Associates, Inc., is a Missouri corporation with its principal place of business in Kansas City, Missouri. Tenenbaum-Hill advises clients about real estate tax assessments and represents its clients in efforts to convince local authorities to reassess property owned by its clients.
 
 
 3
 On January 1, 1983, several months before the hotel opened for business, the Holiday Inn property was valued for tax purposes at $3,590,280. On January 1, 1984, the valuation was increased to $6,930,180. This valuation was retained for the 1985 and 1986 tax years. Continental Development believed that the valuation was too high. Therefore, the partnership entered into a contract with Tenenbaum-Hill, under which Tenenbaum-Hill would endeavor to convince the Blackhawk County Board of Review (which has authority to review assessments) to lower the appraised value of the property. Pursuant to the contract, Tenenbaum-Hill would receive a contingent fee from the plaintiffs based upon the savings for the first two tax years.
 
 
 4
 The property had been valued using the "cost method," which essentially calculates the amount needed to purchase the land and build any improvements on it. In 1985 Tenenbaum-Hill filed a protest with the Blackhawk County Board of Review, suggesting that the proper value of the property in 1985 was $4,042,300 (almost $3 million less than the assessed value). This amount resulted from application of the "income method," which bases an assessment on the income produced by the property. The Board of Review refused to lower the assessment. Tenenbaum-Hill did not seek to appeal this decision to state court, as would have been permitted by Iowa statute. However, Tenenbaum-Hill admits that one of its employees told a Continental Development partner, Bill Lanzotti, that the decision had been appealed.
 
 
 5
 In 1986 Tenenbaum-Hill petitioned once again to lower the assessment. A representative of Tenenbaum-Hill appeared at an oral hearing before the Blackhawk County Board of Review and argued for an assessment of $4,650,000 using the income method. The Board of Review did lower the assessment to $5,821,350, based on a general reduction of assessments on all commercial property in the city of Waterloo, but did not adopt Tenenbaum-Hill's lower assessment. Once again, Tenenbaum-Hill admits that one of its representatives told Continental Development that an appeal would be taken, although no appeal actually was filed. When Continental Development discovered that no appeals had been taken, it brought this suit in state court (subsequently removed by Tenenbaum-Hill to federal court pursuant to 28 U.S.C. Sec. 1441) to recover damages based on a claim of misrepresentation.
 
 B. District Court Opinion
 
 6
 The district court granted Tenenbaum-Hill's motion for summary judgment. In support of its motion, Tenenbaum-Hill had submitted depositions indicating that the cost method was generally accepted in the assessment industry for valuing hotel property during the first three years of operation. The court noted that, in response to these depositions, the plaintiffs "submitted no affidavits contradicting" Tenenbaum-Hill's assertions. Becker v. Tenenbaum-Hill Assocs., Inc., Order at 4 (C.D.Ill. Mar. 9, 1989).
 
 
 7
 Applying Illinois law, the district court declared that recovery for misrepresentation required the plaintiff to prove seven elements:
 
 
 8
 (1) that the Defendant made a statement, (2) of a material nature as opposed to opinion, (3) untrue, (4) known by the person making it to be untrue, (5) reasonably relied upon by the victim to his detriment, (6) made for the purpose of inducing reliance, and (7) such that the victim's reliance led to his injury.
 
 
 9
 Id. (citing Gordon v. Dolin, 105 Ill.App.3d 319, 61 Ill.Dec. 188, 434 N.E.2d 341 (1982)). The district court determined that the Tenenbaum-Hill evidence placed into doubt whether the plaintiffs could prove two of these elements: reasonable reliance and causation. If, as the defendant asserted, the cost method was the only proper assessment technique during a hotel's first three years, then the plaintiffs could not reasonably rely on a statement that an appeal might be successful. Even if reasonable reliance was possible, the district court noted that the Tenenbaum-Hill evidence challenged whether the reliance caused any damage. If the cost method was the only acceptable assessment technique, then the appeals would not have succeeded even if they had been filed. Id. at 4-5.
 
 
 10
 Noting that Federal Rule of Civil Procedure 56(e) directs that a party may not rest on its pleadings when a summary judgment motion is supported by evidence, the district court determined that, given the defendant's evidence, the plaintiffs were placed under the burden of producing evidence to show a material factual dispute. Iowa law provides, the district court continued, that " 'when the complainant offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed.' " Id. at 6 (quoting Iowa Code Sec. 441.21) (emphasis supplied by district court). Because the plaintiffs did not produce any evidence that supported their theory--and certainly not the two independent witnesses that would have relieved them of the burden of showing the assessed valuation was erroneous--the district court concluded that summary judgment for the defendant was appropriate.
 
 II ANALYSIS
 A. Standard of Review
 
 11
 Our standard for evaluating the grant of a summary judgment motion is well established. "In examining the district court's grant of summary judgment, our duty is to review de novo the record and the controlling law." PPG Indus. v. Russell, 887 F.2d 820, 823 (7th Cir.1989). The movant bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (the moving party has the responsibility of informing the court of portions of the record or affidavits that demonstrate the absence of a triable issue). In addition, the moving party may meet its burden of showing an absence of a material issue by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325, 106 S.Ct. at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir.1989); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir.1989).
 
 
 12
 If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). In pertinent part, Federal Rule of Civil Procedure 56(e) reads:
 
 
 13
 The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
 
 
 14
 This rule "requires the nonmoving party to go beyond the pleadings" and produce evidence of a genuine issue for trial. Celotex Corp., 477 U.S. at 324, 106 S.Ct. at 2553. The district court must determine
 
 
 15
 whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
 
 
 16
 Anderson, 477 U.S. at 250, 106 S.Ct. at 2511. Furthermore, in order for an issue to be genuinely in dispute, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. at 249, 106 S.Ct. at 2510.
 
 B. Application to This Case
 
 17
 The principles set forth in the foregoing section establish a framework for our analysis. Initially, we must consider whether the moving party has produced sufficient evidence to support a conclusion that there are no genuine issues for trial. If the moving party has met this burden, we then must examine the sufficiency of the nonmovant's response.[1]
 
 1. Tenenbaum-Hill's evidence
 
 18
 The primary charge leveled by the plaintiffs is that they were injured when Tenenbaum-Hill representatives informed them, erroneously, that an appeal of the assessment had twice been filed in the state court. According to Tenenbaum-Hill, however, this misinformation did not harm the plaintiffs because a state court would have upheld the use of the cost method to assess the property. To establish this premise, Tenenbaum-Hill submitted transcripts from three depositions to support its assertion that the industry standard is to use the cost method for assessing hotels during the first three years of operation. One deposition was from Earl Jago, the Waterloo assessor in 1983 who first assessed the Holiday Inn property. During the deposition, the following colloquy took place:
 
 
 19
 Q. Would you agree that the stabilized level of income normally is reached sometime between the second and the fifth year of operation?
 
 
 20
 A. [Mr. Jago] Yes, we always considered three years as a good basis for determining what the income approach would be.
 
 
 21
 Q. So is it fair to say that one of the reasons that you used the cost approach on the Holiday Inn in Waterloo when it was first built is because for the first three years you would use the cost approach until there is a stabilized income stream?
 
 
 22
 A. That is correct.
 
 
 23
 Jago Deposition at 16.
 
 
 24
 Mr. Jago's successor, Tim Myers, stated in somewhat stronger terms the same preference for using the cost method during a hotel's first years of operation:
 
 
 25
 Q. Does it usually take between two to five years for a motel to develop a reliable income stream in order to value it for the income approach?
 
 
 26
 A. [Mr. Myers] In my opinion it would take a minimum of at least three to five years to establish a characteristic income.
 
 
 27
 . . . . .
 
 
 28
 Q. Usually in that period prior to the minimum of three years, does an appraiser or an assessor use the cost approach to value?
 
 
 29
 A. I typically use the cost approach on new property for the first part of the assessments until an income stream can be established.
 
 
 30
 Myers Deposition at 7.
 
 
 31
 Finally, Tenenbaum-Hill submitted the deposition testimony of Bill Gilbreath, the director of the Property Tax Department for Holiday Inn Corporation, who stated that about three years were necessary to establish a stabilized income stream for purposes of using the income method of assessment. Mr. Gilbreath also speculated that, if he were involved in the effort to lower the assessments in 1985 and 1986, he would not have appealed the denials to the state court.
 
 
 32
 The testimony by the deponents--including the two individuals who actually assessed the property--supports the inference that the standard in the assessment community is to apply the cost method during the first few years, and use the income method only after an income stream has been established. We conclude, therefore, that Tenenbaum-Hill (the moving party) met its burden of supporting its summary judgment motion with evidence indicating that there was no issue of genuine fact for trial.
 
 2. The plaintiffs' response
 
 33
 The plaintiffs assert that the deposition testimony is ambiguous and leaves open the possibility that the income method might be an acceptable assessment model during a hotel's first years of operation. At best, the plaintiffs' interpretation of the deposition testimony overlooks the very clear statements that imply that the industry standard is to use exclusively the cost method during the first years of operation. In addition, despite their clear burden under the Iowa Code,[2] the plaintiffs did not introduce evidence from any other witness that stated positively that the income method may be appropriate in some circumstances.[3] Absent such evidence, the plaintiffs' assertion that Mr. Jago or Mr. Myers might have accepted the income method to assess the Holiday Inn property is mere conjecture. Speculative statements are not sufficient to counter affidavits and other evidence put forward by the moving party. Zayre Corp. v. S.M. & R. Co., 882 F.2d 1145, 1151-52 (7th Cir.1989); Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir.1989) ("A party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture."); see 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2739 at 521-22 (2d ed. 1983) (the nonmovant may not "demand a trial because of the speculative possibility that a material issue of fact may appear at that time"). To survive summary judgment, a triable issue must be a genuine triable issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c).
 
 
 34
 The plaintiffs failed to challenge the summary judgment in this case with any evidence--by affidavit, deposition, or any other means--from a credible witness supporting the plaintiffs' view that the income method may be used to assess hotel property during the first three years of operation. Instead, the plaintiff provided the district court with conjecture that a state court may have adopted the income approach to its case. Such conjecture is insufficient to defend against a summary judgment motion.
 
 Conclusion
 
 35
 The plaintiffs have failed to rebut the inference, supported by the submission of the defendant, that there is no genuine issue for trial. Accordingly, we conclude that the district court correctly granted summary judgment. The judgment of the district court is affirmed.
 
 
 36
 AFFIRMED.
 
 
 
 [1]
 See Mestayer v. Wisconsin Physicians Serv. Ins. Corp., 905 F.2d 1077, 1079 (7th Cir.1990); Transco Leasing Corp. v. United States, 896 F.2d 1435, 1448-49 (5th Cir.1990) (where the moving party met "threshold burden of identifying the absence of proof on an essential element" of the nonmovant's case, the nonmoving party must satisfy its burden of demonstrating that a jury could find in its favor at trial); Interroyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir.1989) (articulating a burden-shifting test for summary judgment motions), cert. denied, --- U.S. ----, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); Waters v. Thornburgh, 888 F.2d 870, 873 (D.C.Cir.1989) (same)
 
 
 [2]
 Iowa Code Sec. 441.21 provides as follows:
 The burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, inequitable or capricious; however, in protest or appeal proceedings when the complainant offers competent evidence by at least two (2) disinterested witnesses that the market value of the property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed.
 
 
 [3]
 The plaintiffs assert that Tenenbaum-Hill's own advocacy of the income method to the Blackhawk County Board of Review indicates that two witnesses could have been procured to shift the burden onto the city to support the assessment. But the Iowa statute provides for a shifting burden only when the property owner presents two disinterested witnesses. Certainly Tenenbaum-Hill would not have qualified as a disinterested witness, because Tenenbaum-Hill had a contingent fee arrangement with the plaintiffs