HARRIS CUSTOM BUILDERS, INC., Plaintiff–Appellee,

v.

Richard HOFFMEYER, Defendant–Appellant.

No. 95–2972.

United States Court of Appeals, Seventh Circuit.

Argued March 29, 1996.

Decided Aug. 8, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 10, 1996.

James P. Hanrath (argued), Thomas R. Vigil, Vigil & Hanrath, Barrington, IL, for plaintiff–appellee.

Joseph A. Grear (argued), Rolf O. Stadheim, Stadheim & Grear, Chicago, IL, for defendant–appellant.

Before CUMMINGS, MANION, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Harris Custom Builders, Inc. has accused Richard Hoffmeyer of infringing its copyright on a set of architectural plans. To say the least, the case was hard fought on several and shifting fronts in the district court. Ultimately Harris won. The primary issues we are considering are the district court's rulings on summary judgment that the copyright on the architectural plans was infringed and is not invalid. Our analysis is relevant only to cases, such as this one, which arise under the 1976 Copyright Act, prior to its amendment by the Berne Convention Implementation Act. For simplicity's sake, we will refer to the applicable law as the 1976 Act.

In 1983, an architect named Maxwin Heimann, who worked for Fernando Meana d/b/a FM Custom Designs, prepared a set of architectural plans for Harris Custom Builders.

Harris used the plans to build a home it called the Mundhank House. The architectural plans were not published. Also in 1983, Harris published a brochure, advertising the Mundhank House. The brochure contained abbreviated and incomplete drawings based on the plans. The brochure did not contain a copyright notice and was not registered with the registrar of copyrights.

In 1988, Harris built another home, called Spring Creek, based on the 1983 architectural plans. In January 1989, Harris, claiming to be the author, registered the Spring Creek blueprints. The title of the work was English Manor. Harris' justification for claiming to be the author was that the plans—though drawn by Heimann—were made for Harris, which claimed that they were a "work made for hire." In addition, Harris claims that it, not Heimann or Meana, is the owner of the copyright by assignment, by quit-claim deed of copyright, by joint ownership, and by equitable ownership. Neither Heimann nor Meana make any claim to ownership of the copyright in the plans.

In late 1988 or early 1989, another brochure was prepared for Harris by Baird & Warner. This one was almost identical to the one prepared in 1983, and like that one, this one did not contain a copyright notice and was not registered.

After the registration of the copyright in the plans for English Manor, Richard Hoffmeyer built a house from blueprints, which the district court found to be substantially similar to the Harris blueprints as published in abbreviated form in the brochure. Hoffmeyer's architect, Nick DeLuca, acknowledges that in designing the house Hoffmeyer built, he used the Baird & Warner sales brochure to prepare his blueprints. DeLuca's blueprints are dated March 14, 1989, and the building permit for construction of the house was issued in July 1989.

There has been no finding that Hoffmeyer or DeLuca had access to the Harris plans themselves. The issue of access was twice the subject of summary judgment motions in the district court. In one, Hoffmeyer sought summary judgment contending that he used the Baird & Warner brochure, not the plans, in designing his house. That motion was denied, in part because there was a factual question as to whether Hoffmeyer had access to the plans. In a second motion, Hoffmeyer contended that he did not have access to the plans; that motion was also denied.

Next, the district court considered cross-motions for summary judgment. In connection with these motions, Harris, apparently changing its tactics, contended that Hoffmeyer's architect copied the brochure, and by so doing infringed the copyright. In its statement of undisputed material facts, Harris said:

> When Nicholas DeLuca prepared the Schwartz working drawings he did so directly from the Baird & Warner brochure which he had before him and made constant reference to while preparing the Schwartz working drawings.

This statement compels the conclusion that Harris has abandoned any claim that DeLuca literally had access to the blueprints themselves.

The district court, however, concluded that because Hoffmeyer had access to the brochure, he "had access to the copyrighted material." The court then compared the Hoffmeyer blueprints to the Harris blueprints and found them to be substantially similar. A finding of infringement was entered. In addition, the district court found that the Harris copyright was not invalid. The court also refused to allow Hoffmeyer to present a defense that he was an "innocent infringer." These are the rulings which Hoffmeyer appeals.

This case arises, as we said, under the Copyright Act of 1976, which became effective January 1, 1978. 17 U.S.C. § 102. The 1976 Act was amended by the Berne Convention Implementation Act of 1988, which became effective March 1, 1989. Under § 13 of that Act, "[a]ny cause of action arising under title 17, United States Code, before the effective date of this Act shall be governed by the provisions of such title as in effect when the cause of action arose."

Copyright ownership vests in the author of the work. 17 U.S.C. § 201. As a general rule, the author is the party who actually creates the work. § 102. There is, however,

an allowance for "works made for hire." If the work is made for hire, the owner is the employer or other person for whom the work was prepared. § 201(b). The contours of the work for hire doctrine were restricted in *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). It was no longer sufficient that the hiring party had a right to control the work. Courts were instructed to apply principles of the general common law of agency as a starting point for the analysis as to whether a work was a work made for hire. Prior to the decision in *Reid,* the law of this circuit was that the right to control and supervise an independent contractor brought the work within the definition of a work made for hire. *Evans Newton, Inc. v. Chicago Systems Software,* 793 F.2d 889 (7th Cir.1986), *cert. denied,* 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 383.

■ The authorship of the "English Manor" plans plays a role in this case. For instance, Hoffmeyer contends that Harris' copyright registration is invalid because it listed Harris as the author, even though the plans were not a "work made for hire" under *Reid.* Harris says that the contention is irrelevant. *Reid* was not decided until four months after the registration had issued, and at the time, Harris' belief that the plans were a work made for hire was reasonable. Under these facts, we will not invalidate the copyright on this basis.

■ Ownership is also important to the infringement issue. In order to make out a valid claim of copyright infringement, Harris must show both ownership of a valid copyright and copying of constituent elements of the work that are original. *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502 (7th Cir.1994). Harris, therefore, must also have a copyright in order to assert a claim of infringement.

Turning to the relationship between the plans and the brochure, we note that under the 1976 Act, publication of a work without proper copyright notice tentatively puts the work into the public domain. However, to alleviate the harshness of that principle, the law provides cure provisions. Publication of a work without notice will not extinguish a copyright in the work if registration is made within five years after the publication without notice and a reasonable effort is made to add notice to all copies which are distributed to the public in the United States after the lack of notice is discovered. 17 U.S.C. § 405(a); *Eastern Pub. & Adv. v. Chesapeake Pub. & Adv.,* 831 F.2d 488 (4th Cir. 1987), *remanded on other grounds,* 492 U.S. 913, 109 S.Ct. 3234, 106 L.Ed.2d 582 (1989).

Under the 1976 Act, then, Harris' plans would remain copyrighted so long as they were unpublished, were published with notice, or if they were published without notice, so long as they were registered within five years and subsequently published with notice. 17 U.S.C. § 405. In this regard, many facts are undisputed. It is undisputed that the plans themselves in their original form remained unpublished until they were registered in 1989; that the brochures contained abbreviated versions of the plans and were published without notice; that the cure provisions do not apply because the first brochure was published in 1983 and the registration was not filed until 1989, more than five years later. It is also undisputed that the brochure containing the abbreviated drawings went into the public domain. What is hotly disputed is the meaning of that final fact.

■ As did the district court, Harris relies heavily on the principles of law involving derivative works to save its copyright. A derivative work is a work based on one or more preexisting works. 17 U.S.C. § 101. In general, publication of a derivative work does not affect the validity of a copyright in the preexisting work, despite the incorporation of the underlying work into the derivative work. *Stewart v. Abend,* 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990). Thus, although the derivative work may enter the public domain, the underlying work itself may remain copyrighted. *Russell v. Price,* 612 F.2d 1123 (9th Cir.1979), *cert. denied,* 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980).

Harris argues that while the brochures are both in the public domain, all that means is that the part of the brochure separate from

the abbreviated drawings is in the public domain. Harris vigorously contends that the drawings remain copyrighted because of the copyright in the underlying work. Thus, because Hoffmeyer copied the drawings in the brochure, he is guilty of infringement of the original copyright in the unpublished plans. And that is what the district court decided. The court said that:

> In this case, defendant Hoffmeyer does not dispute that he used the Baird & Warner sales brochure, which contained an abridged version of the copyrighted architectural drawings, as a basis for his drawings. Therefore, the court finds that defendant had access to the copyrighted material.

The court went on to find that Hoffmeyer, therefore, in fact infringed the underlying plans—which there is no evidence that he ever saw.

■■■ Our question is the one raised by Hoffmeyer: How can a published work remain copyrighted based on its status as an unpublished work? The answer, at least on these facts, is that it cannot. Because Harris, the alleged owner of the copyright in the unpublished drawings, itself published, without notice, the brochure with the abbreviated drawings, it forfeited its right to protect that part of the drawings which were published. Under the 1976 Act while unpublished works are protected, if a published work is to be protected, it must have proper copyright notice or meet the cure provisions in § 405(a). Otherwise, the protection of a copyright is forfeited. Forfeiture of a copyright under the 1976 Act can arise through a failure to meet the statutory formalities. *See* Edward Samuels, *The Public Domain in Copyright Law*, 41 J. Copyright Soc'y U.S.A. 153. A copyright can be forfeited whether or not the owner of the copyright intends that result. It can result as a consequence of publication without proper notice and is "effectuated by operation of law regardless of the intent of the copyright owner." 3 *Nimmer on Copyright* § 13.06, *quoted in Donald Frederick Evans v. Continental Homes, Inc.,* 785 F.2d 897, 912 (11th Cir.1986).

■■■ Even though the brochure is a derivative work, in this instance that fact is beside the point. A "publication of a derivative work constitutes a publication of the preexisting works contained therein." 1 *Nimmer on Copyright* § 4.12[A] n. 2. Harris' copyright on the plans themselves depends on their being unpublished. Once Harris, itself, published a part of the drawings without notice, and without using the cure provisions, it forfeited its right to a copyright in the abbreviated drawings.

If the basis of Harris' claim of copyright was that the underlying architectural plans were registered or published with notice, it could prevail. In *Imperial Homes Corp. v. Lamont,* 458 F.2d 895 (5th Cir.1972), the court considered a situation similar to ours, but arising under the 1909 Act. However, a difference between this case and that one is that Imperial owned registered architectural drawings. Imperial prepared and distributed an advertising brochure which contained only the floor plan from the copyrighted drawings. It noted in the brochure that it claimed a copyright in the floor plans, but no effort was made to copyright the brochure. The court considered two questions. First, whether the reproduction of the floor plan from the copyrighted set of drawings waived or abandoned the copyright. The court determined it did not. The next issue was whether copying the reproduction in the brochure constituted infringement. The court determined that it did.

In response to *Lamont,* Harris would almost surely make an argument it relied on heavily throughout this appeal. It would likely say that because in the 1976 Act the copyright in an unpublished work is a "statutory copyright," it remains in effect even if some part of the copyrighted material is used in a derivative work. Harris is right that the 1976 Act virtually abolished common law copyright so that now all copyrights are "statutory," (*see* 1 *Nimmer on Copyright* § 4.01), but that does not mean quite what Harris would have it mean. It does not mean that one can claim copyright based on that work's being unpublished even after it is published with one's permission.

The result here might not be the same if a stranger were the one publishing the work

containing the abbreviated plans and if he published them without permission: "Congress could not have intended that the various legal consequences of publication under the current Act would be triggered by the unauthorized act of an infringer or other stranger to the copyright." 1 *Nimmer on Copyright* § 4.04 at 4–20. By publishing the brochure, a stranger might be infringing the unpublished copyright. The essence of a derivative work is that "a work will be considered a derivative work only if it would be considered an infringing work if the material that it has derived from a pre-existing work had been taken without the consent of a copyright proprietor of such pre-existing work." 1 *Nimmer on Copyright* § 301. However, when it is Harris itself which publishes the abbreviated drawings, it can no longer claim a copyright based on their unpublished nature.

We think that the Court of Appeals for the Eleventh Circuit got it right. After the effective date of the 1976 Act, that circuit decided *Donald Frederick Evans*. The facts are more complex than those which had been before the court when it was all part of the Fifth Circuit deciding *Lamont*. Donald Frederick Evans (actually a firm, later called the Evans Group) prepared architectural plans for several clients. It affixed the copyright notice to some of the plans but not the others. Drawings of the floor plans appeared in various publications. Some appeared, without a copyright notice, in a Parade of Homes advertising supplement in a newspaper. Others appeared in sales brochures, which bore no notice of copyright. A developer, using the various derivative publications, drew up plans and began selling homes, which the developer itself brazenly described as "very similar" to the Evans' homes but which were "considerably less expensive."

The court determined that Evans had forfeited its right in the copyright. However, in arriving at that conclusion, the court took another step. Because Evans had not itself published all the brochures, the court considered whether Evans had authorized the publication. A finding of forfeiture of copyright protection cannot be based on an unautho-

rized distribution of the work without notice because the notice requirement applies only to copies of works published "by authority of the copyright owner," pursuant to § 401[a]. The court determined that Evans authorized the publications and thereby forfeited his copyright. How much more compelling is the conclusion that Harris forfeited its right in the copyright when it itself published the 1983 brochure? The answer is obvious.

As we have said, it is undisputed that Hoffmeyer copied the drawings in the brochure. Because they are in the public domain, there is no infringement. The foregoing necessarily requires that we also find that the copyright is overly broad. It was obtained on the entire set of plans based on their status as unpublished works. Because the status of the works is in fact published as to the material in the brochure, copyright in those materials has been forfeited by publication without notice. At least as to the material in the brochure, the copyright registration is invalid. For these reasons, the award of summary judgment to Harris must be reversed.