**FOAMATION, INC., Plaintiff and Counterclaim Defendant,**

v.

**WEDEWARD ENTERPRISES, INC., Thomas and Rose Wedeward, Reiss Industries, Inc., and Thomas J. Reiss, Jr., Defendants,**

**and**

**SCOFIELD SOUVENIR & POST CARD COMPANY, Defendant and Counterclaimant,**

v.

**AD CETERA SPORTS MARKETING, INC., Counterclaim Defendant.**

No. 96–C–1047.

United States District Court, E.D. Wisconsin.

July 22, 1997.

Gary A. Essmann, Andrus, Sceales; Starke & Sawall, Milwaukee, WI, Arthur J. Hansmann, Hansmann Law Office, Racine, WI, for plaintiff and counterclaim defendant.

John P. Fredrickson, Michael J. Gratz, Nilles & Nilles, Peter J. Stone, Paul Bargren, Ralph H. Lane, Foey & Lardner, Milwaukee, WI, for defendant and counterclaimant.

## DECISION AND ORDER

CALLAHAN, United States Magistrate Judge.

### Background

On September 12, 1996, the plaintiff, Foamation, Inc. ("Foamation"), filed this action for copyright infringement, federal unfair competition, and state trademark infringement. Its claims arise out of its allegedly having a copyright and protectable trade dress interest, among other things, in a "novelty hat" consisting "of a wearable sculpture in the form of a cheese wedge molded from polyurethane foam." (Complaint, ¶ 10). According to Foamation's complaint, the defendants, Wedeward Enterprises, Inc., Scofield Souvenir & Post Card Company, Thomas Wedeward, Rose Wedeward, Reiss Industries, Inc., and Thomas J. Reiss, Jr., (collectively referred to hereinafter as "Wedeward"), designed and marketed their own novelty hat which infringed upon, among other things, Foamation's copyright and protectable trade dress interest in its novelty hat. Foamation calls its cheese wedge hat a "cheese head." Wedeward calls its cheese wedge hat a "cheese top."

Wedeward responded to the complaint by filing an answer, denying any infringement or other wrongdoing, and asserting a counterclaim alleging, among other things, that Foamation did not have a valid copyright to the cheese wedge hat. In its counterclaim, Wedeward alleged that, because Foamation did not have a valid copyright to the cheese wedge hat, Foamation's contacting Wedeward's customers and telling them that Wedeward's hat infringed upon Foamation's copyright in an effort to discourage such customers from purchasing the "cheese top" constituted, inter alia, unfair competition under 15 U.S.C. § 1125(a) (§ 43(a) of the Lanham Act) and the common law of Wisconsin, for which Wedeward sought compensatory and punitive damages.[1]

On October 15, 1996, Wedeward filed a motion for preliminary injunction seeking an order prohibiting Foamation and Ad Cetera Sports Marketing, Inc. ("Ad Cetera") from interfering with Wedeward's current or prospective customers by asserting that Wedeward was infringing upon Foamation's copyright or by making any other false, misleading or disparaging statements regarding Wedeward. On November 21,

---

1. Wedeward, d/b/a Scofield Souvenir & Post Card Company, has since filed an amended counterclaim alleging tortious interference with prospective contract, defamation and trade libel, unfair competition, conspiracy and copyright infringement.

1996, a hearing was conducted on Wedeward's motion for preliminary injunction. Wedeward's motion was granted by this court in an order dated December 2, 1996. *See, Foamation, Inc. v. Wedeward Enterprises, Inc.,* et al., 947 F.Supp. 1287 (E.D.Wis.1996).

Presently pending before the court is Wedeward's motion for summary judgment in which it seeks an order dismissing Foamation's complaint and each and every claim asserted therein. Wedeward's motion is now fully briefed and ready for resolution. The court has jurisdiction in this action, pursuant to 17 U.S.C. §§ 501, et seq.; 28 U.S.C. §§ 1331, 1338 and 1367. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400. The parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c) and Rule 73(b), Fed.R.Civ.P.

### Facts

Consistent with Local Rule 6.05 (E.D.Wis.), along with its motion for summary judgment and brief in support thereof, Wedeward filed proposed findings of fact. In response, Foamation filed a memorandum in opposition to Wedeward's motion for summary judgment. Along with that memorandum, Foamation filed the declaration of Chris Becker, together with "copies of statements made by 45 Foamation customers ..." attached thereto. Foamation also filed a copy of a "personal videotape collection" belonging to Mr. Becker. However, Foamation did not file any responses to Wedeward's proposed findings of fact. Local Rule 6.05 provides, in pertinent part:

 (a) **Motion.** The moving papers must include either (1) a stipulation of facts between the parties, or (2) the movant's proposed findings of facts, or (3) a combination of (1) and (2).

 (1) The movant must present only the factual propositions upon which there is no genuine issue of material fact and which entitle the movant to judgment as a matter of law, including those going to jurisdiction and venue, to the identity of the parties, and to the background of the dispute.

 (2) Factual propositions shall be set out in numbered paragraphs, with the contents of each paragraph limited as far as practicable to a single factual proposition.

 (b) **Response.** Any materials in opposition to a motion filed under this rule must be filed within 30 days from service of the motion and must include:

 (1) A specific response to the movant's proposed findings of fact, clearly delineating *only* those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number and must cite evidentiary materials which support the claim that a dispute exists.

 (2) A party opposing a motion may present additional factual propositions deemed to be relevant to the motion, in accordance with the procedures set out in (a)(2) of this rule. These propositions may include additional allegedly undisputed material facts and additional material facts which are disputed and which preclude summary judgment.

 \* \* \* \* \* \*

 (d) In deciding a motion for summary judgment, the court will conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out.

Given the foregoing, this court will conclude that there is no genuine material issue as to any of the proposed findings of fact submitted by Wedeward. Thus, for purposes of this motion, the following facts are established.

This court has jurisdiction over this matter pursuant to 17 U.S.C. §§ 501, et seq. (1993); 28 U.S.C. §§ 1331, 1338 and 1367 (1995). Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400 (1995). (Proposed Findings of Fact, No. 1, hereinafter "FF No. .. .").

Foamation, Inc. ("Foamation") is a Wisconsin corporation with its principal place of business at 2018 South 1st Street, Milwau-

kee, Wisconsin, 53201 (FF No. 2). Wedeward Enterprises, Inc. ("Wedeward") is a Wisconsin corporation with a principal place of business at N91 W17174 Appleton Avenue, Menomonee Falls, Wisconsin, 53051, and is doing business in Wisconsin and this judicial district. (FF No. 3).

Thomas Wedeward and Rose Wedeward are residents of this judicial district, are President and Vice–President of Wedeward Enterprises, Inc., are sole shareholders of Wedeward Enterprises, Inc., and are directly responsible for the activities of Wedeward Enterprises, Inc. (FF No. 4).

Ralph Bruno ("Bruno") made his first wedge shaped cheese hat out of foam no later than May 1987. (FF No. 5). When he created his first foam cheese hat, Bruno was employed by S & R Model & Pattern ("S & R"), a partnership comprised of Bruno and Scott Papke ("Papke"). (FF No. 6).

The foam cheese hats initially sold by S & R were identified by means of an S & R return address label that was embedded in the foam in the crown of the hat. The return address label did not make any reference to copyright or include the z symbol. (FF No. 7). At least 1,500 foam cheese wedge hats were sold by S & R without any copyright notice. (FF No. 10). The foam cheese hats continued to be sold under the S & R Model & Pattern name until some time in late 1988 when the name "Foamation" was adopted for S & R's foam products business activities. (FF No. 8).

When the Foamation name was adopted, Bruno and Papke began affixing labels with the name Foamation to the hats. The Foamation labels did not make any reference to copyright or to the © symbol. (FF No. 9).

The partnership between Bruno and Papke was dissolved effective June 2, 1989. (FF No. 11). The partnership Dissolution Agreement specifically addressed the disposition of certain tangible assets of the partnership, such as the real property and machinery and materials used by the partnership, but did not address the disposition of any intangible assets of the partnership such as copyright, trademark, or other intellectual property rights. (FF No. 12).

After the partnership was dissolved, Bruno continued the foam product manufacturing business, including the manufacture of cheese wedge hats as a sole proprietorship under the name Foamation. (FF No. 13). Bruno did not place any copyright notice in hats manufactured by Foamation, a sole proprietorship, until at least some time in 1989 when he acquired new machinery that simplified the process of imprinting identification information directly into the hat itself. (FF No. 14).

The copyright notice that Bruno and Foamation, Inc. have attempted to mold into their hats sold to the public is, in at least some instances, illegible. (FF No. 15). Foamation, Inc. cannot determine the percentage of cheese hats sold to the public since 1989 in which a copyright notice was legible versus the percentage in which an attempted copyright notice was illegible. (FF No. 16).

Bruno incorporated his business as Foamation, Inc. in 1993. (FF No. 17). In its copyright registration application, Foamation, Inc. characterized Bruno's efforts regarding his foam cheese wedge hat as a "work made for hire." That characterization by Foamation is an admission that the foam cheese wedge hat was a work prepared by an employee within the scope of his or her employment. (FF No. 18).

S & R Model & Pattern, as Bruno's employer, was the author of the foam cheese wedge hat when it was created in April 1987. (FF No. 19). There is no instrument of conveyance or a note or memorandum in writing transferring ownership of the copyright in the foam cheese wedge hat from S & R Model & Pattern to any person or entity. (FF No. 20). There is no instrument of conveyance, or note or memorandum in writing transferring ownership of the copyright in the foam cheese wedge hat to Foamation, Inc. (FF No. 21).

When Foamation filed its copyright registration in February 1996, it had not acquired ownership of the copyright in the foam cheese wedge hat. (FF No. 22). When this lawsuit was filed in September 1996, Foamation, Inc. had not acquired ownership of the

copyright in the foam cheese wedge hat. (FF No. 23).

## Standards for Summary Judgment

Summary judgment is no longer disfavored under the Federal Rules. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed to 'secure the just, speedy and inexpensive determination of every action.'") It "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial times for those that really do raise genuine issues of material fact." *United Food and Commercial Workers' Union Local No. 88 v. Middendorf Meat Co.,* 794 F.Supp. 328, 330 (E.D.Mo.1992).

Rule 56(c), Fed.R.Civ.P., requires a district court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The mere existence of some factual dispute does not defeat a summary judgment motion: the requirement is that there be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

The party moving for summary judgment bears the initial burden of showing that there are no material facts in dispute, and that judgment should be entered in his favor. *Hannon v. Turnage,* 892 F.2d 653, 656 (7th Cir.), *cert. denied,* 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). A party moving for summary judgment may satisfy this initial burden by pointing to the adverse party's failure to introduce sufficient evidence to support each essential element of the cause of action alleged. *Anderson,* 477 U.S. at 256,

106 S.Ct. at 2514; *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53.

A party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed. R.Civ.P. *See also, Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53 and *Becker v. Tenenbaum–Hill Associates, Inc.,* 914 F.2d 107, 110 (7th Cir.1990). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Rule 56(e), Fed.R.Civ.P. And a party to a lawsuit may not "... ward off summary judgment with an affidavit or deposition based on rumor or conjecture. 'Supporting and opposing affidavits shall be made on personal knowledge, ...'" *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572–73 (7th Cir.1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Griffin v. City of Milwaukee,* 74 F.3d 824, 826–27 (7th Cir.1996); *Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989). "However, we are not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). Moreover, neither "the mere existence of some alleged factual dispute between the parties," *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2510, nor the demonstration of "some metaphysical doubt as to the material facts," *Matsushita Electric,* 475 U.S. at 586, 106 S.Ct. at 1356, will sufficiently demonstrate a genuine issue of material fact. In that regard, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. See also, *Forman v. Richmond Police Department,* 104 F.3d 950 (7th Cir.1997).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

## The Plaintiff's Claims

Foamation's complaint alleges three claims: "copyright infringement"; "federal unfair competition"; and, "Wisconsin state trademark infringement". Wedeward's motion seeks dismissal of Foamation's complaint in its entirety.

Foamation's first claim is based on its assertion that it has a copyright in a "Novelty Hat", which " . . . consists of a wearable sculpture in the form of a cheese wedge, typically molded from polyurethane foam." (Complaint, ¶ 10).

In its second claim, Foamation asserts that, "[s]ince at least 1987, Foamation has extensively marketed its unique and distinctive 'novelty hat'" and that "[a]s a result of Foamation's efforts its novelty hats have acquired an exceedingly valuable goodwill owned by Foamation and have become widely and favorably known throughout the United States as an indication of source and origin in Foamation." (Complaint, ¶¶ 19 and 20). Foamation claims that Wedeward's hat is copied from Foamation's and that Wedeward's conduct in copying Foamation's novelty hat was intended to cause, and is likely to cause, confusion or mistake, or to deceive as to source, origin, sponsorship, authorization and quality, and is likely to mislead the public into believing that Wedeward's products emanate from Foamation, all in violation of 15 U.S.C. § 1125(a).

Foamation's third claim asserts that Foamation is the owner of a Wisconsin state trademark registration issued on May 22, 1996, covering the mark "consisting of the actual configuration of the goods—a pie shaped configuration in a yellow/orange color, and used as a novelty hat, design of a novelty hat." (Complaint, ¶ 27). Foamation claims that Wedeward's manufacture and distribution of its own novelty hat infringes on Foamation's trademark pursuant to Chapter 132 of the Wisconsin Statutes and the common law of Wisconsin.

## Copyright Infringement

Wedeward argues the undisputed material facts demonstrate that Foamation is not entitled to copyright protection for its cheese wedge hat. It bases its argument on two grounds. First, Foamation's hat was published without notice. Second, Foamation does not own the copyright in question.

 Under the Copyright Act of 1976, as existed at the time, (prior to amendments that took effect March 1, 1989), publication of a work without proper copyright notice dedicated the work to the public domain. *Harris Custom Builders, Inc. v. Hoffmeyer,* 92 F.3d 517 (7th Cir.1996). Forfeiture of copyright as a result of publication without proper notice "is 'effectuated by operation of law regardless of the intent of the copyright owner.'" *Hoffmeyer,* 92 F.3d at 520. And, evidence of just a single published copy of the work, without proper notice, not rebutted by the copyright owner, supports a finding that all published copies lacked notice. *Princess Fabrics, Inc. v. CHF, Inc.,* 922 F.2d 99, 102 (2d Cir.1990); *Cooling Systems and Flexibles, Inc. v. Stuart Radiator, Inc.,* 777 F.2d 485, 489–90 (9th Cir.1985).

 The undisputed facts demonstrate that the foam cheese hat upon which Foamation bases its copyright infringement claim was created and first published in May 1987. The undisputed facts also demonstrate that at least 1,500 of such hats were published without any copyright notice at all. Moreover, the notice that Foamation at some point attempted to place on some of its hats was illegible. Indeed, at the November 20, 1996, hearing on Wedeward's motion for preliminary injunction, Foamation did not proffer a single hat with a legible notice.

And, even if evidence were provided that some Foamation hats had contained legible copyright notices, forfeiture of copyright protection due to lack of notice occurs unless the notice has been omitted from "no more than a relatively small number of copies." 17 U.S.C. § 405(a)(1). Notice being omitted from 2,500 of 100,000 copies has been held to be more than a relatively small number of copies. *Donald Frederick Evans and Asso-*

*ciates v. Continental Homes, Inc.,* 785 F.2d 897 (11th Cir.1986). Similarly, 710 out of 28,000 has been held not to satisfy the exception. *Wabash Publishing Company v. Flanagan,* 10 U.S.P.Q.2d 1714, 1989 WL 32939 (N.D.Ill.1989). Such being the case, 1,500 is more than a relatively small number of copies.

The facts as presented in this case do not paint a picture of a copyright owner endeavoring to place a notice on all of its copyrighted goods, with a small percentage slipping through the manufacturing process without notice. To the contrary, the undisputed facts in this case demonstrate that 100% of the hats manufactured and sold by S & R for the better part of at least two years lacked even an attempt at copyright notice. Thus, even if Foamation were able to demonstrate that every hat made since 1989 included proper notice, it could not reverse the forfeiture of the alleged copyright that had already occurred by operation of law, regardless of Bruno's or S & R's intent. *See, Donald Frederick Evans and Associates, supra; Wabash Publishing Co., supra.*

■ Moreover, the undisputed material facts demonstrate that even after Foamation may have attempted to place a copyright notice in its hats, that copyright notice was illegible. And, as this court stated in its decision granting Wedeward's motion for preliminary injunction, an illegible notice is no notice. *Foamation, Inc.,* 947 F.Supp. at 1296. The bottom line is that, in addition to the initial 1,500 hats which were admittedly published without copyright notice, there is an undetermined number of hats manufactured since 1989 with illegible notices, i.e., no notice at all. Such being the case, any alleged copyright protection that may at one time have belonged to Foamation was forfeited by its publication of more than a relatively small number of hats without notice. For this reason alone, Wedeward is entitled to summary judgment dismissing Foamation's copyright infringement claim.

■ There is yet an additional reason why Foamation's copyright infringement claim should be dismissed. The undisputed material facts demonstrate that Foamation's copyright registration certificate identifies Foamation, Inc. as the author of the cheese wedge hat and owner of the copyright. In these respects, the registration certificate is wrong. First of all, Foamation, Inc. could not have been the author of the hat created in 1987, precisely because that corporation did not even exist until 1993. And, when a plaintiff, like Foamation, Inc., is not the author of the copyrighted work, the plaintiff must prove a proprietary right through a change of title in order to have standing to sue. *Motta v. Samuel Weiser, Inc.,* 768 F.2d 481, 483 (1st Cir.1985). Any transfer of a copyright "is not valid unless the instrument of conveyance or a note or memorandum of the transfer is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). Even assuming S & R, Bruno or some other person or entity had a valid copyright which could have been transferred, Foamation, Inc. has no written instrument transferring to it the title to such copyright. Once again, the bottom line is that, whoever, if anyone, may have owned a copyright interest in the hat, Foamation, Inc. never obtained title to that copyright in accordance with 17 U.S.C. § 204(a).

Only the owner of a copyright is entitled to obtain registration of that copyright. 17 U.S.C. § 408(a). Without title to the copyright, Foamation, Inc. could not properly register the copyright. And, without proving ownership of a valid copyright, Foamation, Inc. cannot sue for infringement of that copyright. 17 U.S.C. § 411(a); *Bateman v. Mnemonics,* 79 F.3d 1532, 1541 (11th Cir.1996). In sum, Foamation's copyright infringement claim must be dismissed.

One final comment should be made on the copyright infringement claim. As stated above, Foamation did not file any response to Wedeward's Local Rule 6.05 proposed findings of fact. Instead, its response to Wedeward's motion for summary judgment dismissing its copyright infringement claim was limited to requesting in conclusory fashion " ... the opportunity to present evidence relating to the notice and ownership issues at a trial or hearing ... in order to give the plaintiff the opportunity to fully present its

copyright case." The federal rules do not allow this court to grant such a request.

It is well settled that a properly supported motion for summary judgment cannot be resisted by resting upon mere allegations or denials. Instead, the party opposing the motion must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. *See also, Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53 and *Becker*, 914 F.2d at 110. "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Rule 56(e), Fed.R.Civ.P. And, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

It is the plaintiff, Foamation, upon which the burden rests to prove its copyright infringement claim. This action was filed on September 12, 1996. The parties have engaged in discovery. Indeed, there has been a hearing on the defendants' motion for preliminary injunction and a decision issued thereon. That Foamation has not come forward with affidavits or other properly admissible materials to oppose the defendants' motion for summary judgment on Foamation's copyright infringement claim reveals that it is unable to do so. Such being the case, there is no need to afford Foamation the opportunity to go to trial on that claim. Wedeward's motion for summary judgment on Foamation's copyright infringement claim is, therefore, **GRANTED.**

I now turn to Foamation's second and third claims. For the reasons which follow, I conclude that they must meet the same fate as its copyright infringement claim.

### Federal Unfair Competition

Foamation's second claim is one for federal unfair competition. It is based on 15 U.S.C. § 1125(a) (§ 43(a) of the Lanham Act). That section provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of facts, or false or misleading representation of fact, which -

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities

shall be liable in a civil action by any person who believes that he or she is or likely to be damaged by such act.

Reduced to its essence, Foamation's claim is that its cheese wedge hat is entitled to trade dress protection. Wedeward argues that it is entitled to summary judgment dismissing this claim because Foamation cannot prove that its cheese wedge hat is entitled to trade dress protection.

Trade dress protection is a species of trademark protection. A trademark is a name, sign, symbol, or device that is attached to goods offered for sale in the market (1) to distinguish them from similar goods and, (2) to identify them with a particular source. *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654 (7th Cir.1995). Trademark law aims to aid consumers in identifying the source of goods by allowing producers the exclusive right to particular identifying words or symbols which they may attach to their products as a designator of source. Allowing a particular producer to monopolize a symbol in this way is no burden on competition because the product itself can still be produced by another vendor (unless, of course, the product is patented). Because the symbol itself adds nothing to the product, consumer desire for products marketed with that symbol must derive solely from the belief that products bearing the mark originat-

ed with the producer for whom the consumers had developed goodwill. Therefore, the only reason a competitor would copy a mark would be to pass off his product as that of the original producer. *Id.,* at 657.

■ Foamation does not claim it has a trademark that has been copied. Rather, it claims its product's trade dress has been copied. Trade dress refers to the form in which a producer presents his brand to the market; it may include a label, a package, or even the product itself if its characteristics serve not a functional purpose, but to signify its source. *Id.,* at 658. "Trade dress encompasses the total image or overall impression created by the product or its packaging." *McCarthy on Trademarks,* § 801[2] at 8-5. The term "trade dress" refers to how a product looks, its total image, or its overall appearance. *Mana Products Inc. v. Columbia Cosmetics Mfg., Inc.,* 65 F.3d 1063, 1068 (2nd Cir.1995). As such, it includes, among other things, the product's size, shape, color, graphics, packaging, and label. *Vaughan Manufacturing Co. v. Brikam International, Inc.,* 814 F.2d 346, 348, n. 2 (7th Cir.1987). Trade dress traditionally referred to the packaging or labeling of the product. It now includes the shape and design of the product itself. *McCarthy on Trademarks,* § 8.01[3] at 8-9.

■ In order to establish the cause of action for trade dress infringement, the complaining party must prove: (1) that the trade dress in question is protectable and, (2) that there is a likelihood of confusion with respect to the origin of the answering party's product. *Turtle Wax, Inc. v. First Brands Corp.,* 781 F.Supp. 1314, 1318 (N.D.Ill.1991). Trade dress is protectable if it is either (1) distinctive or (2) has acquired distinctiveness through secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 766, n. 4, 112 S.Ct. 2753, 2756 n. 4, 120 L.Ed.2d 615 (1992). To prove there is a likelihood of consumer confusion between the two products (the second part of proving trade dress infringement) the issue is not whether Wedeward's packaging or trade dress is identical to Foamation's in every particular detail. *See, McCarthy on Trademarks,* § 8.01[1] at 8-3. Rather, it is whether the similarity of

the total, overall impression causes consumer confusion. *Nelson/Weather–Rite, Inc. v. Leatherman Tool Group, Inc.,* 40 U.S.P.Q.2d 1239, 1244, 1995 WL 669091 (N.D.Ill.1995).

■ However, "[t]rade dress protection only extends to the role of such features as signifiers of source; when competitors are barred from duplicating features whose value to consumers is intrinsic and not exclusively as a signifier of choice, competition is unduly hindered." *Thomas & Betts Corp.,* 65 F.3d at 657. In other words, trade dress is protected by the courts, but only where the trade dress connects the product with the producer. Trade dress offers no general protection for a product, no matter how unique and original. That is the realm of patent (or copyright) law. *Nelson/Weather–Rite, Inc.,* 40 U.S.P.Q.2d at 1244.

■ For this reason, the junior producer in a trademark case "may copy the plaintiff's good slavishly down to the minutest detail; but he may not represent himself as the plaintiff in their sale." *Thomas & Betts Corp.,* 65 F.3d at 658. This makes the issue in trade dress infringement cases somewhat more difficult because the product features, although they identify (or may identify) the source of the product, do not really identify the product—they are the product. *Thomas & Betts Corp.,* 65 F.3d at 658. And if the public primarily associates a form with a product rather than with a particular producer, that form is not a protectable trade dress. *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 120, 59 S.Ct. 109, 114, 83 L.Ed. 73 (1938).

Thus, the first (and potentially only) question to be resolved is whether Foamation's cheese wedge hat has protectable trade dress. As stated, trade dress is protectable under *Two Pesos* only if it is either inherently distinctive or has secondary meaning. *Two Pesos,* 505 U.S. at 769–71, 112 S.Ct. at 2758. Foamation argues that its novelty hats (i.e., cheese wedge hats) are both inherently distinctive and have secondary meaning.

### Are Foamation's Hats "Inherently Distinctive"?

As Foamation notes in its brief, there does not appear to be any universal or standard

procedure for determining whether or not trade dress is inherently distinctive. It cites *Brooks Shoe Manufacturing Co. v. Suave Shoe Corp.*, 716 F.2d 854 (11th Cir.1983) for a three-part test in determining whether or not trade dress is inherently distinctive. Specifically, in that case the court looked at (1) whether the particular trade dress consists of a common basic shape or design; (2) whether it is unique or unusual in its particular field; and, (3) whether it is a mere refinement of a commonly adopted and well known form of ornamentation for that particular class of goods. Foamation also cites *Duraco Products v. Joy Plastic Enterprises*, 40 F.3d 1431 (3d Cir.1994) for an alternative three-part test for determining whether or not trade dress is inherently distinctive. In *Duraco,* the court looked at whether the trade dress was (1) unusual and memorable; (2) conceptually separable from the product; and, (3) likely to serve primarily as a designator of origin of the product.

According to Foamation, its cheese wedge hat meets the Brooks Shoe test because its "wedge-shaped, dimple cheese wedge is hardly a common or basic shape for a hat and there can be no doubt that it is unique or unusual headwear; and it is certainly not a mere refinement of a commonly adopted shape for a hat." (Foamation's Brief, p. 3). Similarly, Foamation argues that were the *Duraco's* product test to be applied, "... no one can argue that the hats are not unusual and memorable, ... the yellow wedge-shaped, dimple design is conceptually separable from a hat and, as such, it is likely to serve as a designator of origin for the product." *Id.*

■ The problem with Foamation's argument on inherent distinctiveness lies with the reliance that it places on its dimpled cheese wedge hat's shape or configuration.[2] This is because the Seventh Circuit Court of Appeals has concluded that configuration of a product, i.e., a product's shape, can never be inherently distinctive for purposes of trade dress protection. In *Kohler Co. v. Moen,*

*Inc.*, 12 F.3d 632, 641, n. 11 (7th Cir.1993), the court held that "[t]he only distinction courts make between trade dress generally and product configuration cases in particular is to require plaintiffs asserting a claim for infringement of trade dress in product configuration under § 43(a) of the Lanham Act to prove secondary meaning *because a product's shape is never inherently distinctive.*" (Emphasis supplied). Along those same lines, in *Thomas & Betts Corp.* the Seventh Circuit stated that "[t]rade dress protection in the configuration of the product itself opens up another can of worms. While it is true that features of a product may serve primarily to signify its source ..., these features are still part of the product itself and may be valued by customers as such ... Trade dress protection only extends to the role of such features as signifier of source; when competitors are barred from duplicating features whose value to consumers is intrinsic and not exclusively as a signifier of choice, competition is unduly hindered." *Thomas & Betts Corp.,* 65 F.3d at 657. Stated another way, eligibility for trade dress protection depends on the trade dress' non-functionality. Functionality is defined as the quality essential to the product's purpose. *Two Pesos,* 505 U.S. at 769, 112 S.Ct. at 2758; *Mana Products,* 65 F.3d at 1068.

■ Let's be blunt. It is the configuration of the cheese wedge hat that makes it what it is. In other words, the configuration is the very essence of the product. The configuration is intrinsic to the product. Such being the case, the law in this circuit compels the conclusion that trade dress protection is not to be afforded Foamation's cheese wedge hat based on inherent distinctiveness. If the hat is to be afforded trade dress protection, such protection must arise because the hat has acquired secondary meaning. Accordingly, it becomes necessary to decide whether the plaintiff has discharged its obligation of demonstrating that there is an issue of fact over whether the

---

**2.** It must be the configuration of the hat that Foamation seeks to protect as trade dress because Foamation makes (or at least at one time made) numerous other items using the same yellow pock-marked/dimpled foam material. These include baseball caps, cow hats, pig hats, and chicken hats.

plaintiff's cheese wedge shaped hat has acquired secondary meaning.

## Have Foamation's Cheese Wedge Hats Acquired "Secondary Meaning"?

On the one hand, trademark law allows the producer to prohibit the copying of a product feature which serves as a signifier of choice in order to preserve his reputation and the goodwill consumers have for his brand. On the other hand, effective competition and the penumbra of the patent laws require that competitors be able to slavishly copy the design of a successful product. *Thomas & Betts Corp.,* 65 F.3d at 658.

■■■■ To police this distinction, courts require as a prerequisite to protection that trade dress which is not inherently distinctive have acquired secondary meaning. Secondary meaning is acquired when "in the minds of the public, the primary significance of a product feature ... is to identify the source of the product rather than the product itself." *Id., citing Qualitex Co. v. Jacobson Products Company, Inc.,* 514 U.S. 159, 162–64, 115 S.Ct. 1300, 1303, 131 L.Ed.2d 248 (1995). "It is not enough, however, that the consumers associate the form of the product with the particular producer. Such an association is inevitable when the first comer is the exclusive producer under [for example] a patent. Consumers must also *care* that the product comes from a particular producer (though they need not be able to identify him) and must *desire* the product with the particular feature *because* it signifies the producer." *Thomas & Betts Corp.,* 65 F.3d at 658–59. (Emphasis provided). To establish secondary meaning, the plaintiff must show that the design is a "mark of distinction identifying the source of the article and that purchasers are moved to buy it because of its source." *Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694, 697 (2nd Cir. 1961).

In the instant action, Foamation argues that its hats have acquired secondary meaning because its customers "... recognize Foamation as the source of origin for wedge-shaped cheese hats and ... acknowledge that the media has given Foamation considerable publicity as the originator of the 'Cheesehead' hat." (Foamation's Brief, p. 4). In support of this argument, Foamation relies on certain statements attached to the Declaration of Chris Becker.

■■■■ First of all, the statements attached to Mr. Becker's Declaration are unsworn. As such, they are hearsay. Rule 56(e), Fed. R.Civ.P., states that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial ..." That rule further requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

As mentioned above, the statements attached to Chris Becker's Declaration are unsworn. Furthermore, Mr. Becker has no first hand knowledge of the information the purported customers make in such unsworn statements. To be sure, Mr. Becker avers that "Foamation intends to accumulate such evidence and introduce the same at trial either through live testimony or deposition transcript as evidence of inherent distinctiveness and/or secondary meaning." (Chris Becker Declaration, ¶ 6). But, the time for presenting sworn affidavits raising genuine issues of fact is now, not at some future trial, and Foamation has not done so. Again, it is important to remember that Foamation bears the burden of proof on its claims and "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Foamation has not made the showing required by Rule 56(c). For this reason alone the entry of summary judgment dismissing its federal unfair competition claim is appropriate.

But, even if the court were to consider the customer statements, summary judgment in favor of Wedeward would nevertheless be appropriate. All of the statements attached to Chris Becker's Declaration are on Foamation, Inc. letterhead. The text of each of them reads as follows:

February 28, 1997

These statements are made to the best of my knowledge and belief.

I am in the business of buying and selling products, including CheeseheadTM hats which I purchase from Foamation, Inc. of Milwaukee, Wisconsin.

In the business, I am familiar with the hat which is wedge shaped, like a piece of pie cut from a circular pie and it is yellow/gold in color, and it has pock marks which are circular or oval shaped depressions on its surface.

This hat has been outstandingly poplar [sic] in my sales and it is known by me and my customers to originate from Foamation, Inc. I have been selling this hat for several years and I have sold thousands of them.

The hat has received extensive news type publicity from both the print and electronic (T.V.) media, and Foamation's name is included in that publicity, which is unsolicited by Foamation, Inc. or myself.

Throughout the above activities, it is the configuration of the hat that is involved, and that, I believe, is the identifying feature of the hat.

First of all, each of these statements conclude with the observation that "... it is the configuration of the hat that is involved, and that, I believe, is the identifying feature of the hat." Even assuming that were true, and that the particular signator could testify to such fact, that would not raise an issue of material fact with regard to secondary meaning.

The issue in trade dress product configuration cases, such as this, is not the primary meaning to consumers of a particular signifier. Rather, it is whether a product feature's primary significance to consumers is as an identifier of source as opposed to an element which contributes to the inherent appeal of the product. If the latter, then it is not protectable trade dress. It was for this reason that the court denied trademark protection to "pillow shape" shredded wheat: "a form in which the public has become accustomed to see the article and which, in the minds of the public, is primarily associated with the article rather than a particular producer." *See, Kellogg*, 305 U.S. at 120, 59 S.Ct. at 114.

To be sure, the configuration of the cheese wedge hat is the identifying feature of the hat. And, even assuming, as asserted in the statements, that the hat has been oustandingly popular, and is known by [the particular] individual signing the statement, and their customers, to originate from Foamation, Inc., this is not enough to demonstrate secondary meaning. Once again, as the Seventh Circuit held in *Thomas & Betts Corp., supra:*

It is not enough that the consumers associate the form of the product with a particular producer.... Consumers must also *care* that the product comes from a *particular* producer ... and must *desire the* product with the particular feature *because it signifies that producer.*

*Thomas & Betts Corp.*, 65 F.3d at 658–59. (Emphasis provided).

Nowhere in the statements attached to Chris Becker's Declaration do the signators state, or even suggest, that it is because Foamation, Inc. produces the cheese wedge hats that the particular signator to such statements purchased such hats. To the contrary, that the statements indicate it is the configuration of the hat that is important would suggest its producer, i.e., its manufacturer, is not all that important.

Moreover, that Foamation's "hat has received extensive news type publicity from both the print and electronic (T.V.) media, and Foamation's name is included in that publicity ..." adds nothing to the analysis. "[S]uch evidence may not provide the basis for an inference of secondary meaning because something other than the secondary meaning of the trade dress may have been responsible for the success of the product. Success of a product is not among the types of evidence described by the [Patent and

Trademark Office] as useful in establishing secondary meaning." *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 873 (8th Cir. 1994).

This principle would appear to be particularly applicable here where, as the defendants point out in their reply brief, "... several of Foamation's statements demonstrate that its cheese hat is desirable as an identifiable badge of support for the Green Bay Packers and the State of Wisconsin. For example, the videotape excerpts submitted by Foamation as an exhibit to Chris Becker's declaration are proof that cheese wedge hats are desirable to Green Bay football fans as a badge of support. Similarly, the representation that Foamation cheese hats were 'badly needed' at the January, 1997, Super Bowl site (Foamation's Brief Opposing Motion for Contempt, p. 4) is an acknowledgement that purchases are driven by Packer support rather than loyalty to Foamation. Moreover, Foamation touts the cheese wedge hat as 'synonymous with America's dairyland' (Exhibit 17 from 11/21/96 hearing) and 'a national symbol representing Wisconsinites' (Foamation brief opposing preliminary injunction, page 2)." (Wedeward's Reply Brief, p. 7).

In order to establish that its product feature, i.e., the wedge shape of its pock marked hat, possesses secondary meaning, Foamation must be able to prove that in the minds of consumers *the primary* significance of the wedge shaped pock marked hat is to identify the hat as a Foamation product. The materials submitted by Foamation have not demonstrated that Foamation can meet that burden. Because of such failure, summary judgment in favor of Wedeward dismissing Foamation's claim of federal unfair competition, i.e., trade dress infringement, is appropriate. *See, Mana Products, Inc. v. Columbia Cosmetics Mfg.*, 65 F.3d 1063 (2nd Cir. 1995) [Court granted summary judgment dismissing the plaintiff's claims under § 43 of the Lanham Act on the grounds that the plaintiff had failed to raise a material issue of fact regarding either the issue of inherent distinctiveness or acquired secondary meaning.]; *See also, Petersen Manufacturing Company v. Central Purchasing*, 740 F.2d

1541 (Fed.Cir.1984) [Summary judgment is appropriate given the lack of proof of secondary meaning. "The non-movant is not entitled to a full trial if he proffers no 'significant probative evidence tending to support the complaint.'" *Petersen Manufacturing Company*, 740 F.2d at 1551.]

### The State Law Claim

 Foamation's state law claim for trademark infringement fares no better than its federal infringement claim. Foamation claims that it is the owner of a Wisconsin state trademark on its hat and that Wedeward's hat infringes on that state trademark. However, the fact that Foamation may have registered its hat with the State of Wisconsin, Secretary of State, does not in and of itself confer rights on Foamation. *See, Mil–Mar Shoe Company, Inc. v. Shonac Corp.*, 906 F.Supp. 476, 479 (E.D.Wis.1995), *reversed* on other grounds, 75 F.3d 1153 (7th Cir.1996). As such, the analysis for statutory and common law trademark infringement claims is identical. *Id.* And in order to prove common law trademark infringement under Wisconsin law, Foamation must prove that the configuration of Foamation's hats has acquired secondary meaning. *First Wisconsin National Bank v. Wichman*, 85 Wis.2d 54, 60–61, 270 N.W.2d 168, 171 (1978). Specifically, in *Wichman*, the court held that:

> Common law trademark infringement is a branch of the law of unfair competition and the principles used in both actions are substantially similar ... As a part of a trademark infringement action, a plaintiff "must show either that his mark is a valid technical mark or that his nontechnical mark has acquired a secondary meaning." 3 *Callmann, Unfair Competition, Trademarks and Monopolies* (3rd Edition, 1969), Sec. 66.1, p. 24 ...
>
> "Secondary meaning" is a term which describes the function that a nontechnical mark comes to have through use the function of identifying the source of goods or services ...

*Wichman*, 85 Wis.2d at 61–62, 270 N.W.2d at 171–72.

 For the reasons stated above, Foamation has failed in its effort to demonstrate a genuine issue of material fact on the ques-

tion of secondary meaning. Accordingly, summary judgment dismissing its state trademark claim is appropriate.

Therefore, for the reasons expressed above,

**IT IS ORDERED** that the defendants' motion for summary judgment is **GRANTED** and the plaintiff's complaint is **DISMISSED.**

A scheduling conference will be conducted in this action on **August 25, 1997, at 9:45 A.M.** At that time, dates governing the further pretrial processing of this action will be discussed with the parties.

SO ORDERED.